IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


JAMES E. SMITH,                    )
                                   )
              Plaintiff,           )
                                   )
     v.                            )          1:13CV708
                                   )
RANDY NOFTLE, ANN STRICKLAND,      )
LUANNE MARSHALL, JOHN ZILL,        )
CHRIS MORAN, and KABA ILCO         )
CORPORATION,                       )
                                   )
              Defendants.          )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff James E. Smith ("Plaintiff"), proceeding pro se, filed a Complaint (Doc. 2) on August 28, 2013, alleging violations of his rights under the Americans with Disabilities Act of 1990, codified as amended at 42 U.S.C. § 12101 et seq. ("ADA"), and the Age Discrimination in Employment Act of 1967, codified as amended at 29 U.S.C. § 621 et seq. ("ADEA"). The Complaint names as Defendants Randy Noftle, Ann Strickland, Luanne Marshall, John Zill (the "Individual Defendants"), and their employer, Kaba Ilco Corporation ("Kaba") (collectively "Defendants").

Defendants filed an Amended Motion for Judgment on the Pleadings (Doc. 18), Plaintiff has filed a Response (Doc. 13),

and Defendants filed a Reply (Doc. 16).[1] The motion is now ripe for ruling. For the reasons stated herein, this court will grant Defendants' motion and dismiss this case.

Chris Moran, another Kaba employee, was also named as defendant, but he has never been served. (See Summons (Doc. 5) (providing a summons as to all Individual Defendants, except Defendant Moran).) The Magistrate Judge, in her order, made it clear that Plaintiff was "responsible for preparing and delivering to the Clerk, the correct summons for service on each defendant." (Order (Doc. 4) at 1.) This court has the authority to dismiss this action for lack of service, pursuant to Federal Rule of Civil Procedure 4(m), because it has been more than 120 days since the Complaint was filed.[2] Although this court would normally be required to give Plaintiff additional time to serve

---

[1] On November 25, 2013, this court allowed Defendants to amend their original Motion for Judgment on the Pleadings (Doc. 9) to include Defendant Kaba, but did not require the parties to submit revised response and reply briefs. (See Order (Doc. 17) at 2 ("[T]his court will treat the amended motion for judgment on the pleadings as objected to by Plaintiff as to all Defendants, including Kaba, on the same grounds expressed in the initial response.").)

[2] Moreover, this court "possesses authority to dismiss an in forma pauperis case at any time the court determines the action or appeal . . . fails to state a claim upon which relief may be granted," as this court finds here. See Jones v. Sternheimer, 387 Fed. Appx. 366, 368 (4th Cir. 2010) (citing 28 U.S.C. § 1915(e)(2)(B)).

- 2 -

Defendant Moran, this court finds that service would be futile for the same reasons this court will dismiss the claims against the other Individual Defendants.  Therefore, this case will be dismissed as to Defendant Moran as well.

**I.    BACKGROUND**

Plaintiff, a Winston-Salem resident, had been employed in various capacities by Kaba since 1976. (Compl. (Doc. 2) at 4.)[3] Plaintiff asserts that he suffers from a medical condition "that rises to the level of a disability" (id.), but Plaintiff does not specify what that disability is. Plaintiff further alleges that "[t]oward the last years of [his] employment," he was "treated unfairly and harassed" in such a manner that his disability was exacerbated. (Id.)

On or around January 15, 2011, Plaintiff fell unconscious while attempting to carry out his work duties and was told by his supervisors that he needed to obtain medical treatment and a medical release before returning to work. (Id.) Plaintiff submits that he "[s]ubsequently . . . sought treatment from [his] physicians, who would not provide [him] with a medical release to return to work but required that [he] take a medical

_____

[3] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 3 -

leave of absence until the situation at work could be resolved."
(Id. at 4-5.) Plaintiff remained on a medical leave of absence
until April 12, 2012, at which time Kaba terminated his
employment, "because [he] exceeded the normal number of days
that an employee can be out of work." (Id. at 5.)

Defendants do not dispute Plaintiff's contention that he
suffered from a medical condition that rises to the level of a
disability. (See Answer of Individual Defs. (Doc. 8) at 3;
Answer of Def. Kaba (Doc. 14) at 3.) Plaintiff also asserts that
"[m]anagement was well aware of [his] health condition [but] did
nothing to engage in interatctive [sic] dialogue with [him]
or . . . [his] physician as to work." (Compl. (Doc. 2) at 5.)

Finally, Plaintiff alleges that he was 56 years old at the
time he was fired. (Id.) Plaintiff filed the present action
asserting that he was subjected to unlawful discrimination in
violation of federal law based on his age and his disability.
(Id.)

## II. **LEGAL STANDARD**

A motion for judgment on the pleadings pursuant to Federal
Rule of Civil Procedure 12(c) is analyzed under the same
standard as a motion to dismiss for failure to state a claim
under Federal Rule of Civil Procedure 12(b)(6). See Burbach

- 4 -

Broad. Co. of Del. v. Elkins Radio Corp.*,* 278 F.3d 401, 405-06 (4th Cir. 2002). Thus, the court assumes the factual allegations in the complaint to be true and draws all reasonable factual inferences in the plaintiff's favor as the nonmoving party. See id. at 406. However, unlike on a Rule 12(b)(6) motion, on a Rule 12(c) motion, the court may consider the answer as well. Rinaldi v. CCX, Inc.*,* No. 3:05-CV-108-RJC, 2008 WL 2622971, at *2 n.3 (W.D.N.C. July 2, 2008).

The factual allegations of the answer "are taken as true only where and to the extent they have not been denied or do not conflict with the complaint." Jadoff v. Gleason*,* 140 F.R.D. 330, 331 (M.D.N.C. 1991). "For the purposes of this motion [the defendant] cannot rely on allegations of fact contained only in the answer, including affirmative defenses, which contradict [the plaintiffs'] complaint," because the "[p]laintiffs were not required to reply to [the] answer, and all allegations in the answer are deemed denied." Id. at 332; see Fed. R. Civ. P. 8(b)(6) ("If a responsive pleading is not required, an allegation is considered denied or avoided."). "The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or

- 5 -

whether the case can be decided as a matter of law." <u>Smith v.</u>
<u>McDonald</u>, 562 F. Supp. 829, 842 (M.D.N.C. 1983), <u>aff'd</u>, 737 F.2d
427 (4th Cir. 1984), <u>aff'd</u>, 472 U.S. 479 (1985).

## III. **ANALYSIS**

Plaintiff alleges violations of his rights under the ADA
and the ADEA. This court finds that Plaintiff's ADA claims can
be characterized in three ways: (1) a claim for failure to
accommodate his disability; (2) a claim for wrongful discharge
based on his disability; and (3) a hostile environment claim.
Plaintiff's ADEA claim is a general age discrimination claim.
This court will address each claim in turn.

### A. **Americans with Disabilities Act**

The ADA prohibits discrimination "against a qualified
individual on the basis of disability in regard to job
application procedures, the hiring, advancement, or discharge of
employees, employee compensation, job training, and other terms,
conditions, and privileges of employment." 42 U.S.C. § 12112(a).
Before analyzing the merits of Plaintiff's three potential ADA
claims, this court will address the preliminary issue of
appropriate parties.

### i.  **Appropriate Parties**

Plaintiff may only assert ADA claims against his employer, not individual defendants who are also employees. See <u>Baird v. Rose</u>, 192 F.3d 462, 471–72 (4th Cir. 1999) ("[T]he ADA does not recognize a cause of action for discrimination by private individuals, only public entities."). Plaintiff's Complaint asserts that Defendants Noftle, Strickland, Marshall, Zill, and Moran are employees of Defendant Kaba, and they are being sued in their individual capacities. (<u>See</u> Compl. (Doc. 2) at 1–2 (listing the positions within Kaba that each Individual Defendant holds.) The ADA does not authorize such a suit, and as a result, this court must dismiss the ADA claim as to these employees. See <u>Baird</u>, 192 F.3d at 471–72. Therefore, the only current defendant against whom Plaintiff may assert an ADA claim is his former employer, Kaba.

### ii.  **Failure to Accommodate**

Plaintiff's Complaint most likely attempts to state a failure-to-accommodate claim under the ADA. Under Title VII, as incorporated by the ADA, a plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discriminatory activity. <u>See</u> 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(e));

- 7 -

Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 593 (4th Cir. 2012).
The Supreme Court has made clear that untimely claims are
subject to dismissal, indicating that "[p]rocedural requirements
established by Congress for gaining access to the federal courts
are not to be disregarded by courts out of a vague sympathy for
particular litigants." Baldwin Cnty. Welcome Ctr. v. Brown, 466
U.S. 147, 152 (1984) (per curium); Mohasco Corp. v. Silver, 447
U.S. 807 (1980) ("[S]trict adherence to the procedural
requirements specified by the legislature is the best guarantee
of evenhanded administration of the law."); Suarez v. Charlotte-
Mecklenburg Sch., 123 F. Supp. 2d 883, 887 (W.D.N.C. 2000).

However, "[f]iling a timely charge of discrimination with
the EEOC is . . . a requirement that, like a statute of
limitations, is subject to waiver, estoppel, and equitable
tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393
(1982). Therefore, this court must examine the particulars of
Plaintiff's Complaint and the time in which it was filed to
determine if Plaintiff's Complaint is self-defeating in showing
that the EEOC charge was untimely.

Plaintiff was terminated by Kaba on April 12, 2012. (Compl.
(Doc. 2) at 5.) Prior to being terminated, Plaintiff was on
medical leave and had not worked on the premises at Kaba since

- 8 -

January 15, 2011. (Id. at 4.) All behavior and acts alleged by
Plaintiff to be in violation of the ADA occurred prior to
Plaintiff being placed on medical leave. (See id.) Defendants
attached to their Answer a copy of Plaintiff's EEOC Charge of
Discrimination ("EEOC Charge"), which this court can consider in
evaluating the present motion. (Answer of Individual Defs., Ex.
A, EEOC Charge (Doc. 8-1).)[4]  Plaintiff's EEOC Charge was filed
on September 14, 2012. Plaintiff's EEOC Charge was filed 167
days after Plaintiff was terminated by Kaba and 609 days after
Plaintiff was placed on medical leave. Plaintiff was unable to
work while on medical leave, so the most recent action taken by
Kaba with regard to Plaintiff was allowing Plaintiff to be

---

[4] This court may rely on the Plaintiff's EEOC Charge (Doc.
8-1) in addressing Defendants' Amended Motion for Judgment on
the Pleadings (Doc. 18), without converting the motion to one
for summary judgment, even though Plaintiff did not submit the
EEOC Charge. Defendants attached the Charge to their Answer
(Doc. 8). The Fourth Circuit has found that a court may consider
a document not attached to the complaint in determining whether
to dismiss the complaint if "it was integral to and explicitly
relied on in the complaint" and if "the plaintiffs do not
challenge its authenticity." See Phillips v. LCI Int'l, Inc.,
190 F.3d 609, 618 (4th Cir. 1999).  This court finds that
Plaintiff's September 14, 2012 EEOC Charge of Discrimination
(Doc. 8-1) is integral to and explicitly relied upon in the
complaint, as Plaintiff would have been unable to file a civil
action without first filing such a charge with the EEOC.
Furthermore, Plaintiff does not challenge the authenticity of
the Charge. As such, this court finds it unnecessary to construe
Defendants' motion as one for summary judgment and will rely on
the parties' submissions in ruling on the present motion.

placed on medical leave on January 15, 2011. The present action was filed more than two years after that date. Therefore, elements of Plaintiff's ADA claims are most likely time-barred. However, this court will address the substantive components of Plaintiff's failure to accommodate claim to show that, even if timely filed, Plaintiff has failed to state such a claim.

To establish a prima facie case for failure to accommodate, an employee must show that: (1) he was an individual with a disability within the meaning of the ADA; (2) the employer had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of the position; and (4) the employer refused to make such accommodations. Haneke v. Mid-Atl. Capital Mgmt., 131 Fed. Appx. 399, 400 (4th Cir. 2005) (citing Rhoads v. FDIC, 257 F.3d 373, 387 n.11 (4th Cir. 2001)). "Implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." Id. (citing 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the individual with a disability in need of the accommodation.")).

It is undisputed that Plaintiff has adequately alleged the first two elements. See supra Part I. Plaintiff focuses on the final two elements, alleging that Kaba had a duty to engage in an "interactive" dialogue with Plaintiff regarding potential accommodations that might "allow [him] to perform the essential functions of his . . . job." (Compl. (Doc. 2) at 6.) Defendant Kaba admits that it never made any accommodations, and it does not claim that it engaged in the "interactive process" contemplated by 29 C.F.R. § 1630.2(o)(3). Kaba contends, instead, that it was never required to provide any reasonable accommodations or engage in any dialogue with Plaintiff because Plaintiff could not show that he was a "qualified individual with a disability – that is, that he could perform the essential functions of the job with or without a reasonable accommodation." (Defs.' Mem. in Supp. of Am. Mot. for J. on the Pleadings (Doc. 19) at 6.) Having reviewed the relevant statutory language and case law, this court agrees.

By its terms, the ADA only requires an employer to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A) (emphasis added). If Plaintiff was not a qualified individual entitled to reasonable

- 11 -

accommodation in the first place, he does not satisfy the third prong of the failure to accommodate inquiry, and Defendant Kaba had no obligation to engage in any interactive process regarding reasonable accommodations suitable for Plaintiff's disability.

"It is well-settled that an individual who has not been released to work by his or her doctor is not a 'qualified individual with a disability.'" Kitchen v. Summers Continuous Care Ctr., LLC, 552 F. Supp. 2d 589, 594 (S.D.W. Va. 2008); see also Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1047 (6th Cir. 1998) ("[B]ecause [the plaintiff] was not released by her doctor to return to work, she has not met the second requirement that she be qualified to perform the essential functions of the job."); Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994) ("An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA."); Crow v. McElroy Coal Co., 290 F. Supp. 2d 693, 696 (N.D.W. Va. 2003) ("Because [the plaintiff] failed to obtain a release to work from his doctor, [the plaintiff] has not shown that he can perform the essential functions of the job with or without reasonable accommodation."); Farrish v. Carolina Commercial Heat Treating, Inc., 225 F. Supp. 2d 632, 636 (M.D.N.C. 2002) ("[A

person] who cannot come to work cannot fulfill any, much less the essential, functions of [a] job."); Gower v. Wrenn Handling, Inc., 892 F. Supp. 724, 727 (M.D.N.C. 1995) (finding that plaintiff was not a qualified individual with a disability when his doctor failed to release him to return to work).

Here, Plaintiff expressly states in his Complaint that his "physicians [] would not provide [him] with a medical release to return to work" and that going back to work "would be detramental [sic] to [his] health." (Compl. (Doc. 2) at 4-5.) Thus, it appears on the face of the Complaint that Plaintiff was not a "qualified individual with a disability" entitled to a reasonable accommodation in the first instance.

Moreover, even if Plaintiff had been cleared to return to work, "[t]he [employer's] duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability." Wilson v. Dollar Gen. Corp., 717 F.3d 337, 346-47 (4th Cir. 2013); see also Ainsworth v. Loudon Cnty. Sch. Bd., 851 F. Supp. 2d. 963, 981 (E.D. Va. 2012) (noting that an employer is only required to engage in the "interactive process" of determining a reasonable accommodation if the "plaintiff

- 13 -

. . . make[s] clear to the employer that [he or she] want[s] assistance for her disability"). Plaintiff makes no allegation that he made any request for accommodation at any point, and has therefore failed to demonstrate that Kaba's obligation to find a reasonable accommodation was ever triggered.[5]

### iii. **Wrongful Discharge**

Plaintiff's Complaint could also be read as asserting a wrongful discharge claim under the ADA. Plaintiff's EEOC Charge of Discrimination was filed on September 14, 2012. (EEOC Charge (Doc. 8-1).)  As stated earlier, Plaintiff's EEOC Charge was filed 167 days after Plaintiff was terminated by Kaba. Therefore, his wrongful discharge claim is timely. However, as with the failure-to-accommodate claim, this court finds that Plaintiff has failed to state a wrongful discharge claim under the ADA.

---

[5] On a related note, "[n]othing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect. Rather, reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995). Without any indication that any sort of accommodation would allow Plaintiff to return to work after more than a year of medical leave, Defendant Kaba had no obligation to grant any further leave time.

To establish a prime facie case of wrongful discharge, a plaintiff must show by a preponderance of the evidence that (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. Haneke v. Mid-Atl. Capital Mgmt., 131 Fed. Appx. 399, 400 (4th Cir. 2005) (citing Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001)).

As to the first element, an individual is "within the ADA's protected class" if he is a "qualified individual with a disability," which means "an individual with a disability who, with or without reasonable accommodation, can perform essential functions of the employment position that such 'individual' holds or 'desires.'" 42 U.S.C. § 12111. As discussed supra, Plaintiff has not alleged facts sufficient to show that he was a qualified individual with a disability within the meaning of the statute at the time he was terminated. When an employee cannot attend work, that employee cannot be, absent special circumstances not present here, a qualified individual protected by the ADA. Tyndall, 31 F. 3d at 213. Plaintiff has failed to

allege that he was actually performing any work at all for Kaba
at the time he was discharged and within the statutory period,
or that he was capable of performing such work at the time of
his discharge.  Because Plaintiff has not shown that he was a
qualified individual pursuant to the ADA when Kaba terminated
him, Plaintiff has failed to state a claim for wrongful
discharge.

### iv. **Hostile Work Environment**

Plaintiff's Complaint also attempts to state a hostile work
environment claim under the ADA. The Fourth Circuit has found
that a hostile work environment claim is cognizable under the
ADA. To state a claim for hostile work environment under the
ADA, a plaintiff must plausibly assert:

> (1) he is a qualified individual with a disability;
> (2) he was subjected to unwelcome harassment; (3) the
> harassment was based on his disability; (4) the
> harassment was sufficiently severe or pervasive to
> alter a term, condition, or privilege of employment;
> and (5) some factual basis exists to impute liability
> for the harassment to the employer.

Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001). As
stated supra, discrimination claims are subject to a strict
timeline. However, in the context of a hostile work environment
claim, the Supreme Court has recognized a "continuing violation"
theory:

- 16 -

> [T]he statute precludes recovery for discrete acts of
> discrimination or retaliation that occur outside the
> statutory time period.  We also hold that
> consideration of the entire scope of a hostile work
> environment claim, including behavior alleged outside
> the statutory time period, is permissible for the
> purposes of assessing liability, so long as an act
> contributing to that hostile environment takes place
> within the statutory time period. The application of
> equitable doctrines, however, may either limit or
> toll the time period within which an employee must
> file a charge.

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002).

As this court has previously explained, the only action made by Kaba affecting Plaintiff that falls within the statutory period is when Kaba terminated Plaintiff on April 12, 2012, for exhausting medical leave. The date that Plaintiff went on medical leave and all preceding events fall outside the statute of limitations for an ADA claim and are, therefore, time-barred. In order for this claim to be actionable and not time-barred, Plaintiff would need to show that it is a continuing violation. To plead a continuing violation, Plaintiff must show that

> '[T]he unconstitutional or illegal act was a fixed and
> continuing practice.' In other words, if the plaintiff
> can show that the illegal act did not occur just once,
> but rather 'in a series of separate acts[,] and if the
> same alleged violation was committed at the time of
> each act, then the limitations period begins anew with
> each violation.'

A Soc'y Without A Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) (quoting Nat'l Adver. Co. v. City of Raleigh, 947 F.2d

1158, 1166-67 (4th Cir. 1991)), cert. denied, ____ U.S. ____,
132 S. Ct. 1960 (2012). However, "continual unlawful acts are
distinguishable from the continuing ill effects of an original
violation because the latter do not constitute a continuing
violation." Id. Thus, because the only portion of Plaintiff's
claim that is timely is being terminating for exhausting his
medical leave, Plaintiff's termination would have to be one in a
series of continuing unlawful acts to not be time-barred.

Plaintiff contends that "[he] suffer[s] from a medical
condition that rises to the level of a disability." (Compl.
(Doc. 2) at 4.) Plaintiff further asserts that "[t]owards the
last years of [his] employment, [he] was treated unfairly and
harassed by other employees and supervisors, which exacerbated
[his] disability." (Id.; EEOC Charge (Doc. 8-1).) Plaintiff also
alleges that Kaba was "well aware of [his] medical condition,
medications and doctors before [his] incident."[6] (Pl.'s Resp. in
Opp. to Defs.' Mot. for J. on the Pleadings (Doc. 13) at 3.) In
its Answer, "Kaba admits that the Plaintiff has a medical
condition that might be a 'disability' as that term is defined
in the [ADA]." (Answer of Def. Kaba (Doc. 14) at 3.)  However,

_____

[6] The "incident" most likely refers to the January 15, 2011
date when Plaintiff went on medical leave.

Kaba denies that Plaintiff was discriminated against in any way in violation of the ADA. (Id. at 4.) Plaintiff does not make any allegations of discriminatory behavior by Kaba, or its employees, occurring any time between January 15, 2011, when he was placed on medical leave and April 12, 2012, when he was terminated. Therefore, there is no other discriminatory action upon which Plaintiff could base his hostile work environment claim, and the only discriminatory event that could anchor a continuing violation claim is Plaintiff's termination on April 12, 2012.

As explained supra, Plaintiff's termination was not a violation of the ADA. Plaintiff was not a qualified individual at the time he was terminated. In addition, Plaintiff was on medical leave and was not given a medical release to return to work. There was no accommodation that Kaba could make to enable Plaintiff to work when Plaintiff was medically unable to work. The only claim Plaintiff could make connecting the termination to any previous discriminatory behavior on the part of Kaba is a continuing effects claim, which does not trigger a viable ADEA claim. Moreover, because the termination itself is not a violation, it cannot serve as the basis for a continuing violation claim. Therefore, Plaintiff's hostile work environment

claim is time-barred or, in the alternative, Plaintiff has not stated a claim.

### B.  <u>Age Discrimination in Employment Act</u>

Plaintiff also asserts a claim under the ADEA,[7] but his allegations regarding age discrimination are minimal. Plaintiff has made no allegations that would suggest direct evidence that Kaba intentionally discriminated against him on the basis of his age. Therefore, Plaintiff must rely on the burden-shifting method of proof established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Henson v. Liggett Grp., Inc.</u>, 61 F.3d 270, 274 (4th Cir. 1995) (applying <u>McDonnell Douglas</u> to ADEA claims). <u>McDonnell Douglas</u> requires a plaintiff to first allege a prima facie case of discrimination, which gives rise to an inference of discrimination. <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802-04. The burden then shifts to the defendants to produce a legitimate non-discriminatory reason for their action. <u>See</u> <u>id.</u>; <u>Henson</u>, 61 F.3d at 274. If the defendants provide evidence of a non-discriminatory reason for their action, the plaintiff bears the ultimate burden of persuasion and must show, by a

---

[7] The ADEA, like the ADA and Title VII, "do[es] not provide for causes of action against defendants in their individual capacities." <u>Jones</u>, 387 Fed. Appx. at 368. Therefore, Plaintiff cannot state a plausible claim under the ADEA against the Individual Defendants.

- 20 -

preponderance of the evidence, that the proffered reason was pretext for discrimination. See id. at 275.

To establish a prima facie case of discriminatory discharge under the ADEA, Plaintiff must allege the following elements: (1) he is a member of the protected class; (2) he was qualified for the job and met the employer's legitimate expectations; (3) he was discharged despite his qualifications and performance; and (4) following his discharge, he was replaced by someone with comparable qualifications outside the protected class. Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998) (citing Blistein v. St. John's College, 74 F.3d 1459, 1467-68 (4th Cir. 1996)).

Plaintiff alleges that he was 56 years old at the time he was discharged, and therefore meets the first element, but his Complaint is deficient in at least two ways. First, he has failed to demonstrate that he was "qualified" for the job or that he was meeting Defendant Kaba's "legitimate expectations" at the time he was discharged. As discussed supra, Plaintiff had been on medical leave for over a year, with no release from his physicians to return to work. Second, Plaintiff makes no allegations that he was replaced by anyone, much less an individual with "comparable qualifications outside the protected class." See Causey, 162 F.3d at 802. This court finds that

- 21 -

Plaintiff has not stated a sufficient ADEA claim and, therefore, this claim must be dismissed.

## IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Amended Motion for Judgment on the Pleadings (Doc. 18) is **GRANTED**, that Defendants' Motion for Judgment on the Pleadings (Doc. 9) is **DENIED AS MOOT**, and that this case is **DISMISSED WITH PREJUDICE** as to Defendants Randy Noftle, Ann Strickland, Luanne Marshall, John Zill, and Kaba Ilco Corporation.

**IT IS FURTHER ORDERED** that the case is **DISMISSED WITHOUT PREJUDICE** as to Defendant Chris Moran, pursuant to Federal Rule of Civil Procedure 4(m), because Plaintiff has failed to serve Defendant Moran and any attempts to serve Defendant Moran would be futile based on the reasons outlined in this Memorandum Opinion and Order.

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 11th day of June, 2015.

_____
            United States District Judge

- 22 -